I respectfully dissent.
This case calls for us to interpret the terms of an insurance policy and an associated application for insurance in the context of R.C. 3911.06.
Willie C. Langley went to see his insurance agent, Dan Smith, on February 27, 1998 to apply for life insurance. Mr. Langley filled out an application for life insurance coverage with Federal Kemper Life Assurance Company ("Federal Kemper") and paid the premium then requested of him. None of the information he provided in the application is alleged to have been inaccurate when he filled out the application.
For reasons that are not clear, Federal Kemper did not provide the insurance policy to Dan Smith until May 9, 1998. The company required that Mr. Langley pay a higher premium than originally quoted before Mr. Langley could be delivered the policy. Mr. Langley paid the additional sum required and received his copy of the policy on May 18, 1998.
Later in May of 1998, Mr. Langley was diagnosed with lung cancer. The lung cancer proved fatal. Mr. Langley died November 28, 1998.
When Mr. Langley's widow sought payment under the policy, Federal Kemper refused payment. Federal Kemper attempted to justify its refusal to pay by invoking its interpretation of Part B of the application, which reads:
 I (we) have read all the questions and answers in the application, including all required parts. All responses are true and complete to the best of my (our) knowledge and belief. I (we) promise to tell the Company of any change in the health or habits of the Proposed Insured [Willie C. Langley] that occurs after completing this application, but before the Policy is delivered to me (us) and the first premium is paid.
I (we) agree:
 1. This application, including all of its parts, will be the basis for and form part of the Policy;
 2. An Agent has no authority to alter the Company's rules or requirements, this Agreement, the Receipt, or the Policy;
 3. The first premium will not be deemed paid unless any check, draft or other instrument of payment (given as premium) is paid in accordance with its terms; and
 4. (Except as provided in the Receipt if given) the insurance applied never takes effect unless, during the lifetime of the Proposed Insured: (a) the Policy has been issued, delivered to, and accepted by me (us); (b) the required first premium has been paid; (c) any amendments issued with the Policy have been completed and signed; all while the health and habits of the Proposed Insured remain as stated in this application.
Federal Kemper's interpretation assumes that the "first premium" will be paid at the same time that the life insurance policy is delivered. However, Federal Kemper accepted payment from Mr. Langley over two months before it delivered the policy. Because Federal Kemper accepted payment of the premiums in the amount required from Mr. Langley, I believe that the company waived its right to revoke the policy for health changes which occurred between the initial payment of premium and the time when Federal Kemper finally got around to delivering the policy. In other words, I believe that Federal Kemper gave up its rights to revoke the policy for changes in health which occurred after February 1998, when it accepted the proffered payment of premium in the sum its agent demanded.
I also note that Federal Kemper listed the "Policy Date" on the policy it delivered as being May 8, 1998. The company expected payment to be made in subsequent years for a calendar year commencing May 8. Thus, at a minimum, I believe Federal Kemper is bound by the state of Mr. Langley's knowledge on May 8, 1998. As of May 8, 1998, Mr. Langley had had an x-ray and a CT scan, but no diagnosis which would have given him any indication that he had lung cancer.
I believe that Federal Kemper cannot demand premium payments from people like Mr. Langley, accept the premium payments they demand and then pile additional notification requirements upon the Mr. Langley's of the world in an effort to avoid payment when payment is due. Mr. Langley was a carpenter, not a lawyer or an insurance agent. He did what he was asked and paid almost $800 for an insurance policy to protect his widow and children. Federal Kemper was quick to accept payment from Mr. Langley and even to demand an additional premium when the application revealed that Mr. Langley was a smoker, but has refused to pay the benefits Mr. Langley thought he was buying.
R.C. 3911.06 makes the grant of judgment on behalf of Federal Kemper even more inappropriate. The Ohio Legislature has clearly narrowed the ability of insurance companies to avoid payment of benefits for information provided or not provided in application for insurance. R.C.3911.06 reads:
 No answer to any interrogatory made by an applicant in his application for a policy shall bar the right to recover upon any policy issued thereon, or be used in evidence at any trial to recover upon such policy, unless it is clearly proved that such answer is willfully false, that it was fraudulently made, that it is material, and that it induced the company to issue the policy, that but for such answer the policy would have not have been issued, and that the agent or company had no knowledge of the falsity or fraud of such answer.
In essence, R.C. 3911.06 requires proof of common law fraud before an insurance company can refuse to pay. No evidence of fraud is present in this case.
As a result of the foregoing, I believe that summary judgment should not have been granted to Federal Kemper. I therefore dissent from affirming the judgment granted by the trial court.